UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNNY TIPPINS,

    Plaintiff,

                Case No. 16-cv-10140

v

                Honorable Thomas L. Ludington
NWI-1 Inc. et al.,          Magistrate Judge Patricia T. Morris

    Defendants.
_____/

**ORDER DENYING MOTION FOR COPY OF REPORT AND RECOMMENDATION, OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION TO REMAND, GRANTING DEFENDANTS' MOTIONS TO DISMISS, DENYING FRUIT OF THE LOOM'S MOTION TO DISMISS AS MOOT, DENYING MOTION FOR DISCOVERY AS MOOT, AND DISMISSING COMPLAINT**

    Plaintiff Johnny Tippins, a prisoner proceeding *pro se*, initiated this action by filing suit against Defendants NWI-1, Inc., LePetomane II, Inc., LePetomane III, Inc., and Velsicol Chemical, LLC in Gratiot County Circuit Court on October 23, 2015. Plaintiff alleges that Defendants are responsible for injuries he suffered as a result of drinking contaminated water while incarcerated in a state prison in St. Louis, Michigan from 2004 to 2007. Defendants removed the action to this Court on January 15, 2016. ECF No. 1. The matter was referred to Magistrate Judge Patricia T. Morris for general case management in accordance with 28 U.S.C. § 636(b) on January 22, 2016. *See* ECF No. 6. On June 17, 2016 the magistrate judge issued her report, recommending that Plaintiff's motion to remand be denied, Defendants' motions to dismiss be granted, and Plaintiff's motion for discovery be denied as moot. *See* Rep. and Rec., ECF No. 24. For the reasons stated below, the magistrate judge's report will be adopted, and Tippins's complaint will be dismissed with prejudice.

**I.**

Plaintiffs' claims relate to his alleged exposure to contaminated water while incarcerated in a state prison in St. Louis, Michigan ("SLF") from 2004 to 2007. His claims arise out of Velsicol's ownership and operation of a fifty-two acre DDT (dichlorodiphenyltrichloroethane) manufacturing site from 1965 to 1978 on the Pine River in St. Louis, Michigan, on which Velsicol manufactured, stored, and handled DDT and various DDT related by-products and wastes, including p-CBSA (para-Chlorobenzene Sulfonic Acid). Northwest Industries ("NWI") allegedly purchased Velsicol in 1965, became the successor owner of the plant site in 1986, and eventually became a subsidiary of Fruit of the Loom. Through a bankruptcy proceeding that began in December 1999, FTL and NWI were reorganized into Defendant NWI-1, Inc. *See In re Fruit of the Loom, Inc., et al.,* Case No. 99-04497 (PJW). Defendant Lepetomane III is the Trustee of the Custodial Trust, which was created through the bankruptcy proceeding to manage and address the environmental liabilities related to seven properties of which it became the owner, at least one of which is a Contaminated Site. Defendant Lepetomane II is the Trustee of the Successor Trust, which was created through the bankruptcy proceeding to hold financial assets on behalf of the Custodial Trust to be used for remediation of the seven properties owned by the Custodial Trust. ¶ 10.[1]

In his complaint, Plaintiff alleges that he complained to SLF Health Care of stomach pain, headache, nausea, and fatigue numerous times during his confinement, but was informed that his symptoms were not the result of contaminated water. *See* Compl. ¶ 7. Plaintiff alleges that after he was transferred to the Saginaw Correctional Facility in April of 2007 he was diagnosed with Graves' disease, and was again informed that his condition was not a result of the

---

[1] For a full history of the relevant contamination site, the EPA's attempts to oversee cleanup of the site, and NWI's chapter 11 bankruptcy proceedings (of which NWI-1 is a successor entity), see *City of St. Louis v. Velsicol Chem. Corp.,* 708 F. Supp. 2d 632, 642 (E.D. Mich. 2010).

contaminated water at SLF. *Id.* at ¶ 8. In his objections, Plaintiff reaffirms that he inquired whether the allegedly contaminated water contributed to his injury at the time of his injury in 2007. *See* ECF No. 28 p. 4.

### A.

On July 9, 2007, the City of St. Louis filed a complaint in Gratiot County Circuit Court arising out of the p-CBSA contamination and threatened contamination of its drinking water system against Velsicol, NWI-1, Lepetomane II, Lepetomane III, Edgewood Farms, Inc., and John Does 1-300. The matter was removed to this Court on August 31, 2007 as related to core bankruptcy proceeding under 28 U.S.C. §§ 1452(a) and 1332(b) and pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a). *See City of St. Louis v. Velsicol Chemical Corp.*, Case No. 07-cv-13683 (E.D. Mich., August 31, 2007). After the Court issued an order denying the City's motion to remand on March 10, 2015, the parties reached a settlement agreement in March of 2011, which was approved by the Court. *Id.* at ECF Nos. 85, 125-26.

An additional lawsuit was commenced by Tippins' fellow inmates while he was confined at SLF. In 2006, nineteen of Tippins's fellow prisoners filed a class action contesting eighteen different aspects of their confinement. *Rouse v. Caruso*, Case No. 06-10961 (E.D. Mich 2006). One of the grounds for relief was that the water at the Facility was contaminated. *Id.*, Complaint ¶¶ 162–166, ECF No. 1. The Court denied the prisoners' motion to certify a class because they were not represented by an attorney. *Id.* at ECF No. 86. In February of 2011, the magistrate judge issued a report and recommendation advising the Court to dismiss the Eighth Amendment claims based on the contaminated water. *Id.*, Report 44–46, ECF No. 237. The magistrate reasoned that the EPA had provided information to the city about toxicology studies indicating that the chemicals were not harmful when consumed at levels below 25,000 parts per billion, and

that the EPA's tests of the city's wells had revealed chemical levels of only 21 to 180 parts per billion. Id. at 45. The magistrate concluded that prison officials did not violate the prisoners' Eighth Amendment rights because they reasonably relied on the EPA's reports. The plaintiffs did not object to the magistrate's report, which was then adopted by the district court. *Id*. at ECF No. 239.

On April 29, 2010 the Michigan Department of Corrections, among others, distributed a memorandum identifying p-CBSA as the specific contaminant at issue, but explaining that the concentration of p-CBSA was far below the level believed to cause adverse effects on humans. Tippins alleges that he did not receive a copy of the memorandum until February 19, 2014, after he was able to conduct online research at the Chippewa Correctional facility and file a grievance. *See* Compl. ¶ 8. After receiving a copy of the copy of the memorandum Plaintiff attempted to intervene in the prisoner's lawsuit on March 19, 2014. *See Rouse*, Case No. 06-10961 at ECF No. 285. Tippins's motion was denied by the magistrate on April 17, 2014. *Id*. at ECF No. 288. The magistrate reasoned that intervention was not appropriate because the plaintiffs' contaminated water claim had been dismissed on the merits, and because the statute of limitations on Tippins's claims had accrued "no later than 2007." *Id*.

**B.**

Tippins initiated his own action on March 4, 2014, alleging violations of his Eight Amendments rights under 42 U.S.C. § 1983. *See Tippins v. Caruso*, No. 14-CV-10956, 2015 WL 5954800, at *2 (E.D. Mich. Oct. 14, 2015). On September 1, 2015, Magistrate Judge Anthony Patti issued a report and recommendation to dismiss the action in its entirety, finding that Tippins's claims fell outside the relevant three year statute of limitations. *Id.* at ECF No. 44. The district court adopted the report on October 14, 2015, agreeing that Tippins's claims were barred

by the three year statute of limitations. *Id.* at ECF No. 44. Tippins then filed a motion for reconsideration, arguing that the court had erred in failing to apply the discovery rule set forth in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id*. at ECF No. 54. The magistrate denied Tippins's motion on May 5, 2016, finding CERCLA's discovery rule inapplicable. *Id*. at ECF No. 59. After reopening the matter so that Tippins could file objections, the district judge overruled Tippins's objections, in which he had again argued that CERCLA's discovery rule applied. *Id*. at ECF No. 62. The Court then re-adopted the September report and recommendation and dismissed the case. *Id.* at ECF No. 63.

## C.

Plaintiff Tippins initiated the present action by filing suit against Defendants in Gratiot County Circuit Court on October 23, 2015. Plaintiff's complaint essentially copies the allegations and claims raised in the City of St. Louis's prior action against the Defendants. *See City of St. Louis,* Case No. 07-cv-13683. On January 15, 2016 Defendants removed the action to this Court and added Fruit of the Loom, Inc. as an interested party. Defendants assert that jurisdiction in this Court is proper under 28 U.S.C. § 1452(a) because Tippins's claims relate to a core bankruptcy proceeding arising under 28 U.S.C. § 1334(b). *See* ECF No. 1. Specifically, Defendant alleges the proceeding relates to *In re Fruit of the Loom, Inc., et al.,* Case No. 99-04497 (PJW). Defendant also alleges that removal is proper under 28 U.S.C. § 1442(a) because Tippins has brought claims against a person acting under color or a federal officer or agency.

Also on January 22, 2016 Defendants LePetomame II, Lepetomame III, and NWI-1 moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 4. Defendant Velsicol then filed a motion to dismiss on January 29, 2016, and Fruit of the Loom filed a motion to dismiss on February 5, 2016. *See* ECF Nos. 12, 15. In response,

Plaintiff Tippins moved to remand the action to Michigan state court. *See* ECF No. 17. He also filed a motion seeking discovery of his medical records. *See* ECF No. 18.

The magistrate judge issued her report on June 17, 2016 recommending that Plaintiff's motion to remand be denied, Defendants' motions to dismiss be granted, and Plaintiff's motion for discovery be denied as moot. *See* Rep. and Rec., ECF No. 24. The magistrate judge reasoned that jurisdiction was proper in this Court under § 1442(a). She then determined that dismissal was appropriate because Plaintiff's claims fell outside of the applicable three year statute of limitations. *Id*.

On July 7, 2016 Plaintiff Tippins filed a motion to reopen the objection period, stating that he had not received the Report. *See* ECF No. 25. Service of the Report was reflected on the docket on July 7, 2016, and Tippins was mailed a hard copy. Tippins's motion was then granted and the objection period was extended to July 27, 2016. On July 20, 2016 Tippins filed a motion requesting a copy of the report and Report. *See* ECF No. 27. He then filed objections to the report on August 3, 2016, which will be considered timely.

**II.**

As an initial matter, Tippins's motion for a copy of the Report will be denied. *See* ECF No. 27. Tippins was sent a copy of the Report on July 8, 2016. Accordingly, this Court has satisfied its duty of service.

**III.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate

judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D.Mich.2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.* Tippins raises three objections to the magistrate judge's Report. *See* ECF No. 28. Each objection will be addressed in turn.

**A.**

Because Plaintiff Tippins's third objection challenges this Court's jurisdiction over his claims, it will be addressed first. Plaintiff Tippins argues that the magistrate judge incorrectly

found removal of this action pursuant to § 1442(a). He also reasserts his claim that this Court does not have jurisdiction under §§ 1452(a) and 1332(b). Because the Court has an independent duty to ensure that it has jurisdiction at all times, Plaintiff's objection will be addressed.

A resolution of the jurisdictional issues requires an inquiry into *In re Fruit of the Loom, Inc., et al.,* Case No. 99-04497(PJW) and related docket numbers 4341 and 4740 (United States Bankruptcy Court for the District of Delaware, Chief Judge Peter Walsh Presiding). On December 29, 1999, FTL and NWI Land Management Corporation ("NWI"), along with thirty affiliates, (collectively, "the Debtors") filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware. On March 22, 2002, the bankruptcy court confirmed the Debtors' Third Amended Joint Plan of Reorganization ("the Plan"). Consistent with the plan, the EPA, Illinois, Michigan, New Jersey, Tennessee, FTL, NWI, Velsicol, and True Specialty Corporation (Velsicol's parent corporation) entered into a settlement agreement that was incorporated into the plan and approved by the bankruptcy court on August 9, 2002. The bankruptcy court retained jurisdiction "to hear and determine all matters including, without limitation, disputes arising under the Environmental Settlement Agreement . . . or this Order." ¶ 18. On March 19, 2007, the bankruptcy court closed the case but again retained jurisdiction "to hear and determine all matters arising under the Environmental Settlement Agreement and this Court's August 9, 2002 Order." Similarly, the Settlement Agreement provides for the bankruptcy court to:

> . . . retain jurisdiction over the subject matter of this Agreement, the Parties hereto, the NWI/FTL Successor, the Custodial Trustee, and the Velsicol Fund Trustee for the duration of the performance of the terms and provisions of this Agreement for the purpose of enabling any of the Parties, the NWI/FTL Successor, the Custodial Trustee, the Velsicol Fund Trustee, and the third party beneficiaries to apply to the Court for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Agreement or to effectual [sic] or enforce compliance with its terms.

S. Agmt. ¶ 26.

### i.

Pursuant to 28 U.S.C. § 1452(a):

> a party may remove any claim or cause of action in a civil action other than … a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

*Id.* Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The Sixth Circuit has recognized that "Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases." *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (citations omitted). When claims brought in a civil proceeding do not "arise under" Title 11, but may be "related to" a bankruptcy proceeding, the pertinent test is "whether the outcome of that [civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. In other words, "there must be some nexus between the 'related' proceeding and the title 11 case." *Id*.

More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. (citations and quotations omitted). *See, e.g., Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 583-84 (6th Cir. 1990) (concluding that the action was "related to" a bankruptcy proceeding when the plaintiffs sued the bankruptcy trustee in his official capacity and sought recovery from the estate because "the litigation could conceivably affect the size of the . . . estate"). However, an "extremely tenuous connection" does not suffice for "related to" jurisdiction. *Sanders*

*Confectionery Prods. v. Heller -26- Fin., Inc.*, 973 F.2d 474, 482 (6th Cir. 1992) (quotations and citations omitted).

In his objections, Plaintiff acknowledges that any recovery he obtained would come from the LePetomane Defendants. Plaintiff argues, however, that because neither the Bankruptcy Plan nor Settlement Agreement contemplated recovery from claims of bodily injury, that his claims are not sufficiently related to the bankruptcy proceeding. This argument is without merit. Plaintiff's claims are "related to" the FTL bankruptcy proceedings because the proceedings here could alter "rights, liabilities, options, or freedom of action" and could "impact[] upon the handling and administration of the bankrupt estate." *Robinson*, 918 F.2d at 583-84. Regardless of the notion that the estate ceased to exist upon confirmation of the Plan, Plaintiff has sued the Trustees (Lepetomane II and III) of the Successor and Custodial Trusts, which were created pursuant to the Plan, solely for the purpose of holding estate property and distributing estate assets. Lepetomane II and III are not entities that have emerged from bankruptcy to resume business operations, but creations of the bankruptcy proceedings to resolve particular creditor claims. The resources of the Custodial and Successor Trusts, of which Lepetomane II and III are the Trustees, are subject exclusively to the terms and administration of the bankruptcy court orders and the incorporated Settlement Agreement. Thus, any recovery from the funds of the Trusts would necessarily impact the administration of the bankrupt estate, and "related to" bankruptcy jurisdiction exists under § 1334(b).

**ii.**

Under § 1334(c), when subsection (b) provides the only ground for federal subject matter jurisdiction, and a timely motion is filed by "a party in a proceeding based upon a State law claim . . . related to a case under title 11 . . . the district court shall abstain from hearing such

proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." *Id*. § 1334(c)(2). Similarly, a district court may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11" if doing so is "in the interest of justice, or in the interest of comity with State courts or respect for State law." *Id*. § 1334(c)(1). "For mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *In re Dow Corning Corp*., 86 F.3d at 497. "Mandatory abstention under section 1334(c)(2) is not jurisdictional and must be raised in a timely motion." *Robinson*, 918 F.2d at 584.

Plaintiff argues that because his state law claims for bodily injuries are not "core proceedings" this Court must exercise mandatory abstention. Core proceedings include, inter alia, "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), "orders to turn over property of the estate," *id*. § 157(b)(2)(E), and "other proceedings affecting the liquidation of the assets of the estate," *id*. § 157(b)(2)(O). Subsection 157(b)(3) provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id*. § 157(b)(3). The Sixth Circuit has explained that "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006) (quoting *Sanders Confectionary Prods*., 973 F.2d at 482).

Because Plaintiff has brought claims against Lepetomane II and II, which are Trusts created by the bankruptcy to administer the bankruptcy estate and would not exist but for the underlying bankruptcy proceeding, Plaintiff's claims are inextricably intertwined with the

bankruptcy proceeding, and constitute a "core proceeding." Thus, mandatory abstention does not apply to this case, and the Court will not exercise discretion to abstain. Because jurisdiction is proper under §§ 1452(a) and 1334(b) there is no need to reach the merits of Plaintiff's claim that it is improper under § 1442(a).

**B.**

In his first and second objections, Tippins agrees that the statute of limitations for personal injury claims is three years under Michigan Compiled Law § 600.5805(10), but argues that the magistrate judge should have applied the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") discovery rules preempting state law accrual rules. *See* 42 U.S.C. § 9658. In relevant part, CERCLA provides as follows:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

§ 9658(a)(1). The Act defines "federally required commencement date" as the date "the plaintiff knew (or reasonably should have known) that the personal injury or property damages… were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." § 9658(b)(4)(A).

CERCLA's statute of limitations is inapplicable to this case, as Plaintiff's lawsuit does not assert any underlying CERCLA action providing for cleanup and remedial activities. *See Knox v. AC & S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988) ("The discovery statute of limitations . . . is limited to personal injury or property damage causes of action under state law in situations where there is an underlying CERCLA action providing for cleanup and remedial

activities." (emphasis added)). Instead, Plaintiff sets forth only state law claims for his own personal injuries.

Even if CERCLA did apply to the present action, Tippins's claims would still be barred. Based upon his own allegations, Plaintiff knew of the alleged cause of his injuries no later than 2007 when he was diagnosed with Graves' disease. *See also Rouse, et al. v. Caruso, et al.,* Case No. 2:06-cv-10961, ECF No. 288 (E.D. Mich. March 3, 2006) (denying Tippins's motion to intervene in part because the statute of limitations on his claims had accrued "no later than 2007"); *Tippins v. Caruso*, No. 14-CV-10956, 2015 WL 5954800, at *2 (E.D. Mich. Oct. 14, 2015) ("Tippins knew that he suffered an injury no later than 2007."). The fact that Tippins allegedly did not know of the specific contaminant at issue until 2014 does not change this fact, especially considering that the City of St. Louis filed a public lawsuit related to the p-CBSA contaminates in 2007, as acknowledged by Tippins in his complaint. *See* Compl. ¶ 6. Because Plaintiff knew of the alleged cause of his injury by 2007, Plaintiff's claims are untimely.

### III.

Accordingly, it is **ORDERED** that Tippins' motion for a copy of the Report and Recommendation, ECF No. 27, is **DENIED.**

It is further **ORDERED** that Tippins's objections, ECF No. 28, are **OVERRULED**.

It is further **ORDERED** that the Report and Recommendation, ECF No. 24, is **ADOPTED**.

It is further **ORDERED** that Tippins's motion to remand, ECF No. 17, is **DENIED.**

It is further **ORDERED** that Defendants' motions to dismiss, ECF Nos. 4 and 12 are **GRANTED**.

It is further **ORDERED** that Fruit of the Loom's motion to dismiss, ECF No. 15, is **DENIED as moot.**

It is further **ORDERED** that Tippins's motion for discovery, ECF No. 18, is **DENIED as moot.**

It is further **ORDERED** that Tippins's complaint, ECF No. 1, is **DISMISSED with prejudice.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 12, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 12, 2016.

s/Johnetta Curry
Johnetta Curry, Acting in the Absence of
Michael A. Sian, Case Manager